UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 06-61245-CIV-MARRA/JOHNSON

L. S. and S. S. on behalf of K. S.,

Plaintiff,

v.

THE SCHOOL BOARD OF BROWARD
COUNTY, FLORIDA,

Defendants.
_____/

**ORDER AND OPINION**

This Cause is before the Court upon Defendant's Motion to Dismiss Plaintiffs' Complaint. (DE 6.) Plaintiffs have filed a response (DE 10) and Defendant has filed its reply (DE 11). The Court has considered the motion and is otherwise fully advised in the premises. The matter is now ripe for review.

**I.     Background**

On August 17, 2006, Plaintiffs L.S. and S.S.. filed, on behalf of K.S., a Second Amended Complaint asserting claims against the School Board of Broward County pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132.

The facts, as gleaned from the complaint and the Administrative Law Judge's ("ALJ") order attached to the complaint,[1] assumed as true, are as follows:

---

[1] The Court only relied on the ALJ order for undisputed timeline and procedural clarifications. All substantive facts have been taken from the complaint.

L.S. and S.S. are parents of K.S. who was born on August 3, 1989. (Complaint ¶¶ 3, 10.) As a student, K.S. has alternated between public and private school throughout her primary years. (Amended complaint ¶ 11, Final Order ¶¶ 2-4.) She began eighth grade at Plantation Middle School, a Broward County public school, but was withdrawn because she was receiving poor grades, she could not focus on her tasks, the school was neither responsive nor providing the help she needed. (Complaint ¶ 11.) She completed eighth grade at a private school. (Final Order ¶¶ 2-4.) K.S. began ninth grade at American Heritage during the 2004-2005 school year. (Complaint ¶ 12.) During this time she had problems focusing, began cutting herself, and was failing in school. (*Id.*) As the school year progressed, K.S. confided to her father that she was having suicidal thoughts, that she was having sex with knives, that she was selling her body for drugs, that she had been raped, and that she was using illicit drugs. (Complaint ¶ 14.)

K.S. began to be treated by a number of health professionals. (Complaint ¶¶ 16-40.) The various Doctors and therapists found K.S. to be depressed, suicidal, homicidal and highly unstable. (*Id.*) KS. was suffering from depersonalization, visual and auditory hallucinations, and ADHD. She also confessed to having a history of self asphyxiation and wanting to kill her sister. (*Id.*)

K.S.'s parents withdrew her from American Heritage in February of 2005 and enrolled her the following month at La Europa Academy ("La Europa"), a private residential therapeutic school. (Final Order ¶ 5.) The ALJ indicates in his report that on August 8, 2005, while a student at La Europa, K.S.'s parents enrolled her at Plantation High School, a Broward County public school, and requested Exceptional Student Education ("ESE") services in the Broward County public school system. (Final Order ¶ 82.) K.S. had not received any ESE or related

2

services from Broward County or any other public or private school system prior to this request. (Final Order ¶ 84.) The parents informed the School Board that K.S. would not be attending school in Broward County. (*Id.*)

On August, 10, 2005, the parents attended the Individualized Educational Plan ("IEP") meeting, along with many of the parents' doctors who attended telephonically. (Complaint ¶ 43.) The group discussed K.S.'s medical reports, all of which recommended a residential placement for KS. (*Id.*) The parents requested a residential placement for K.S. but the IEP team settled on the Sunset Program, a therapeutic day program. (*Id.*) The parents strenuously objected, stressing that a day program would not suit K.S.'s medical needs and could not provide a safe environment for their child. (*Id.*) All of the health professionals who treated K.S. concurred that the child's problems were so severe that without around the clock supervision, intensive therapeutic and pharmacological treatment integrated with an academic program, K.S. could not benefit from education. (Complaint ¶ 47.)

After rejecting the proposed IEP, the parents requested a Due Process Hearing with an ALJ. The ALJ found that K.S. was not offered a free and appropriate public education because the severity of her illness required a residential placement. (Complaint ¶ 47.) However, the ALJ held that the parents were not entitled to reimbursement because K.S. had not received ESE and related services prior to enrolling at La Europa, as required by the IDEA.[2] The ALJ suggested that tuition reimbursement could be awarded by a federal district court pursuant to the court's inherent and equitable powers. (*Id.*)

---

[2]  The parents sought reimbursement for tuition and related expenses from July 2006 through December 14, 2005. DE 1, Ex. A at 8 (Final Order ¶ 5).

3

Plaintiffs subsequently filed the instant complaint, requesting that the decision of the ALJ be affirmed in all respects, save for his ruling on reimbursement. Plaintiffs seek this Court to order tuition reimbursement and related costs, pursuant to its equitable powers, for Defendant's failure to offer a free and appropriate public education. (Complaint ¶ 48.)

Plaintiffs also filed a second count alleging Defendant violated the ADA "because the School Board showed gross misjudgment concerning educational services because it has a policy of never providing or paying for a residential placement contrary to the law which amounts to intentional discrimination." (Complaint ¶ 59.) The School Board allegedly does "not have a residential placement for its students if necessary and refuses to pay for a residential placement even if one is necessary." (Complaint ¶ 60.) The School Board "showed gross misjudgment by having this policy in place, which in turn resulted in a denial of the residential placement to K.S." (Complaint ¶ 61.)

Defendant moves to dismiss the IDEA claim, alleging that IDEA precludes reimbursement to parents who enroll their child in private school prior to seeking a FAPE from a public agency. Defendant argues the IDEA imposes an absolute prerequisite to obtaining reimbursement for private school under the IDEA; namely, that the child has previously received special education services under the authority of a public agency prior to being enrolled in private school. 20 U.S.C. § 1412(a)(1)(C)(ii). Defendant relies on *Greenland Sch. Dist. v. Amy N.*, 358 F. 3d 150 (1st Cir. 2004), for the proposition that parents who unilaterally place their child in private school without first raising the issue of her special education needs with the public school district are not entitled to reimbursement for private school tuition. *Id.* at 161. Defendant also moves to dismiss Plaintiffs' ADA count, asserting that Plaintiffs have failed to state a claim

4

because Plaintiffs have not alleged K.S. was subject to a discriminatory act by reason of her disabilities.

In response, Plaintiffs asserts that the Court possesses inherit equitable powers, despite the language of the IDEA, to award tuition reimbursement even when a child has not previously received ESE or related services from a public agency. For support, Plaintiff relies upon *School Committee of Town of Burlington v. Department of Education*, 471 U.S. 359 (1985), and its progeny, notably *E.W. v. Sch. Bd. of Miami-Dade*, 307 F. Supp. 2d 1363 (S.D. Fla. 2004) and *M.M. v. School Board of Miami Dade County*, 437 F. 3d 1085 (11th Cir. 2006). Plaintiffs argue that *M.M.* holds that parents are not required in all cases to first enroll their child in public schools in order to be entitled to private school reimbursement. With respect to the ADA claim, Plaintiffs argue they have sufficiently alleged discrimination by citing to the paragraphs in their complaint discussed above.

In reply, Defendant argues that the pertinent language in the Eleventh Circuit's decision in *M.M.* is dicta and the Court should be guided instead by the First Circuit's decision in *Greenland*.

## II.     Legal Standard

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). It is well settled that a complaint should not be dismissed unless "it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). When considering a motion to dismiss, the Court must accept all of the plaintiff's

allegations as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Likewise, when a party argues that a complaint fails to invoke the Court's subject-matter jurisdiction on its face, the Court is required to look and see if the allegation of subject matter jurisdiction is sufficiently alleged, and the allegations in the complaint are taken as true for purposes of the motion. *See Broward Garden Tenants Ass'n v. United States Envtl. Prot. Agency*, 157 F.Supp. 2d 1329, 1336 (S.D. Fla. 2001)(*quoting Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).

**III.   Discussion**

    *A.   Legal Background*

The IDEA creates a federal grant program to assist state and local agencies in providing early intervention services for disabled infants and toddlers, and in providing education to disabled children. 20 U.S.C. § 1400, *et seq.*. Under Part B of the IDEA, states must provide disabled children between the ages of three and twenty-one with the opportunity to receive a "free appropriate public education" ("FAPE") by offering each student special education and related services under an individualized education program, or IEP. 20 U.S.C. § 1412(a)(1)(A), (a)(4). The purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A).

To ensure that the child is provided with a FAPE, the School Board develops an IEP "during a meeting between the student's parents and school officials." *Loren F. v. Atlanta Independent Sch. Sys.*, 349 F. 3d 1309, 1312 (11th Cir. 2003)(citing 20 U.S.C. § 1414(d)(1)(A)-(B). Parents have the option of rejecting the IEP, placing their child in a private school, and then challenging the IEP via a due process hearing. *M.M.* 437 F. 3d at 1096 (citing 20 U.S.C. §§

1412(a)(6)(A) & 1415(a)-(o); 34 C.F.R. § 300.403(b). If the parents successfully challenge the IEP, and if it is determined that the placement in private school was proper, "a court or a hearing officer may require [the School Board] to reimburse the parents for the cost of that enrollment...." *Id.* (citing 20 U.S.C. § 1412(a)(10)(C)(ii)); *see* 34 C.F.R. 300.403(c) ("[A] court or a hearing officer may require the agency to reimburse the parents for the cost of that [private school] enrollment if ... the agency had not made FAPE available to the child in a timely manner prior to that enrollment and ... the private placement is appropriate.").

Following a decision by the state agency, the parents have the right to bring a civil action challenging the agency decision in either state or federal court. 20 U.S.C. § 1415(i)(2); Florida Statute § 1003.57. If the district court determines that the IEP was not reasonably calculated to enable the student to receive education benefits, it "shall grant such relief as the court determines is appropriate." *M.M.*, 437 F. 3d 1085 (citing 20 U.S.C. § 1439(a)(1)); *see also* 20 U.S.C. § 1412(a)(10)(C)(ii) ("[A] court or a hearing officer may require [the School Board] to reimburse the parents for the cost of that enrollment."); 34 C.F.R. § 300.403(c) ("[A] court or a hearing officer may require the agency to reimburse the parents for the cost of that [private school] enrollment if ... the agency had not made FAPE available to the child in a timely manner prior to that enrollment and ... the private placement is appropriate."). The reviewing court has broad discretion in determining what is appropriate based on the circumstances of each case. *M.M.*, 437 F. 3d 1098 (citing *Burlington,* 471 U.S. at 369).

### B.     IDEA Claim

Section 1412(a)(10)(C)(ii) states:

> If the parents of a child with a disability, *who previously received special education and related services under the authority of a public agency,* enroll the child in a private elementary school or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment.

20 U.S.C. § 1412(a)(10)(C)(ii) (emphasis added); *see* 34 C.F.R. § 300.403(c) (specifying that private preschool enrollment can be reimbursed). Defendant asserts that the clause italicized above, "who previously received special education and related services under the authority of a public agency," precludes K.S. from receiving reimbursement and requires the Court to dismiss her claim outright. Defendant argues that since K.S. never received special education and related services prior to enrolling at La Europa, and the parents failed to give notice to the School Board that they desired a FAPE prior to her enrollment at the private residential placement, Plaintiffs may not be reimbursed.

In *M.M.*, the Eleventh Circuit Court of Appeals recently rejected that same argument advanced by Defendant, albeit on different facts. *M.M.*, 437 F. 3d 1099-1100. In *M.M*, the three year old plaintiff, C.M., had been born with profound bilateral sensorial hearing loss. *M.M.*, 437 F.3d at 1090. C.M. had received auditory-verbal therapy ("AVT") as part of the Miami-Dade Early Intervention Program while in private preschool, up until the age of three.[3] *Id.* at 1090. At

---

[3]     Under Part C of the IDEA, states must provide disabled children under three years of age with an individualized family service plan, or IFSP, setting forth specific early intervention services necessary for the toddler or infant and his or her family. 20 U.S.C. § 1435(a)(4). A state is obligated to have policies and procedures in place to ensure a smooth and

8

age three, when C.M. was ready to transfer to public preschool, the Miami Dade School Board developed an IEP whereby C.M. would receive verbotonal ("VT") therapy upon entering public preschool. *Id.* C.M.'s parents rejected the IEP, preferring to have C.M. continue with his AVT treatment in private preschool. *Id.* at 1092. The defendant in *M.M.* asserted that C.M. was not entitled to reimbursement because C.M. had never been enrolled in public school. *Id.* at 1098. The defendant relied on the same provision relied on in the instant case, *who previously received special education and related services under the authority of a public agency*, Section 1412(a)(10)(C)(ii). *Id.* at 1098.

The Eleventh Circuit rejected the defendant's argument based on Section 1412(a)(10)(C)(ii). The Eleventh Circuit "first" held that C.M. had actually received special education and related services under the authority of a public agency, as provided under Section 1412(a)(10)(C)(ii), when he received the AVT services through the Miami-Dade County Early Intervention Program. *Id.* at 1099. Alternatively, the Court held "[s]econd, sole reliance on the fact that C.M. never attended public school is legally insufficient to deny reimbursement under Section 1412(a)(10)(C)(ii)." *Id.*

The Eleventh Circuit went to great lengths to interpret the operative phrase - *who previously received special education and related services under the authority of a public - agency* and justify this second/alternative holding. In explaining its interpretation of the statutory language at issue, the court in *M.M.* cited to the Supreme Court's decision in *Burlington*

---

effective transition from early intervention programs provided under Part C of the Act to preschool programs provided under Part B of the IDEA. 34 C.F.R. § 300.132(a).

which recognized the difficult decisions facing the parents of children with disabilities.

> [a] final judicial decision on the merits of an IEP will in most instances come a year or more after the school term covered by that IEP has passed. In the meantime, the parents who disagree with the proposed IEP are faced with a choice: go along with the IEP to the detriment of their child if it turns out to be inappropriate or pay for what they consider to be the appropriate placement. If they choose the latter course, which conscientious parents who have adequate means and who are reasonably confident of their assessment normally would, it would be an empty victory to have a court tell them several years later that they were right but that these expenditures could not in a proper case be reimbursed by the school officials. If that were the case, the child's right to a *free* appropriate public education, the parents' right to participate fully in developing a proper IEP, and all of the procedural safeguards would be less than complete.

*M.M.*, 437 F. 3d at 1099 (quoting *Burlington*, 471 U.S. at 370). The Eleventh Circuit next recognized that many courts, relying on the *Burlington* line of cases, have concluded that reimbursement is proper if the School Board has failed to offer a sufficient IEP, and consequently a FAPE, even "if a child has never enrolled in a public school." *See E.W. v. Sch. Bd. of Miami-Dade*, 307 F.Supp. 2d 1363, 1370 (S.D. Fla. 2004);[4] *Justin G. v. Bd. of Educ. of Montgomery County*, 148 F.Supp. 2d 576, 587 (D. Md. 2001); *Suzawith v. Green Bay Area Sch. Dist.*, 132 F.Supp. 2d 718, 728 (E.D. Wis. 2000); *Hoffman v. East Troy Community School Dist.*, 38 F.Supp. 2d 750, 761 (E.D. Wis. 1999); *but see Baltimore City Bd. of Sch. Comm'rs. v. Taylorch*, 395 F.Supp. 2d 246, 249 (D. Md. 2005).

---

[4] Plaintiffs rely on *E.W.*, cited to with approval by the Eleventh Circuit in *M.M.* In *E.W.*, with facts similar to those in *M.M.*, the Court held that should the plaintiffs establish their child was denied a FAPE, "they should not be prevented from seeking reimbursement under § 1412(C)(ii) merely because they refused to place their child, even for a day, in a public school program found to be inappropriate." *E.W.*, 307 F. Supp. 2d at 1370.

The Eleventh Circuit paid particular attention to *Justin G.*, where the school board had argued that § 1412(a)(10)(C)(ii) barred reimbursement "because Justin was never enrolled in the public school system." *Justin G.*, 148 F.Supp. 2d at 587. The Eleventh Circuit found the district court's rationale "pellucid" and quoted from the court's analysis, noting how the school board's "disturbing interpretation would also place parents of such children in the untenable position of acquiescing to an inappropriate placement in order to preserve their right to reimbursement." *M.M.*, 437 F. 3d at 1099 (quoting *Justin G.*, 148 F. Supp. 2d at 587).

After carefully analyzing the progeny of *Burlington*, the Eleventh Circuit "conclud[ed] that parents are not required in *all cases* to first enroll their child in public school pursuant to an inadequate IEP in order to preserve their right to reimbursement." *M.M.*, 437 F. 3d at 1099 (emphasis added).

The clear language and reasoning of the Eleventh Circuit in *M.M.* forecloses Defendant's argument at this early stage of the proceedings. *M.M.*'s holding certainly encompasses, at least generally, the facts surrounding K.S. and the parents' refusal to accept the IEP offered by the School Board. K.S.'s parents, while keeping their child enrolled in a private school (La Europa), sought to take advantage of the FAPE guaranteed to their child by the IDEA. The parents followed the proper procedures of meeting with school board and requested an IEP. When the parents were dissatisfied with the IEP offered by the school board - the IEP did not provide for a residential placement as the parents and their doctors' deemed was necessary - the parents sought review through the proper administrative procedure. The ALJ found that the School Board denied K.S. a FAPE, but ruled that he could not award reimbursement because the children had not previously received special education and related services under the authority of a public

agency. 20 U.S.C. § 1412(a)(10)(C)(ii).

As discussed above, the Eleventh Circuit conclusively held in *M.M.*, after a well reasoned discussion, "that parents are not required to first enroll their child in public school in *all* cases pursuant to an inadequate IEP in order to preserver their right to reimbursement." *M.M.*, 437 F. 3d at 1099 (emphasis added). Defendant correctly argues that the facts in this case are different than the facts the Eleventh Circuit was faced with in *M.M.*. Here, as opposed to having a three year old child who had never been in the public school system, the Court has before it, as Defendant states, "the parents of a ninth grade student who attended private school for most of her life, was never evaluated by the public school system and never provided with special education services under the authority of any public agency," and whose parents did not request a reimbursement until after they had withdrawn their child from the public school system. (Def. Mot. at 11.) Although factually different scenarios, at its core the defendants' attack in both cases is premised on the same provision of the IDEA and strikes at the same ostensible deficiency in plaintiffs' case - the child never received prior services under the authority of a public agency.

Following the rationale of *Burlington's* progeny, the Court finds no material difference between (a) parents who immediately identify a disability in their infant child, request ESE services prior to the child's enrollment to preschool, and keep their child in private preschool before and after the development of an insufficient IEP and (b) parents whose child is diagnosed later in life, yet still during the time a FAPE is guaranteed, and decide to keep their child in private school before and after the development of an insufficient IEP. The clear holding of *M.M.* encompasses both scenarios, at least at this motion to dismiss stage. Whether K.S.'s

12

situation ultimately falls outside the range of cases contemplated by the Eleventh Circuit (where prior enrollment in public school is not required) is a determination better suited for a ruling on the merits.

Defendant attempts to cast the "second" holding in *M.M.* as dicta. The Court disagrees. Although capable of resting on their "first" rationale - that C.M.'s AVT qualified as prior services through a public agency - the Eleventh Circuit chose to provide guidance on a statute that both the ALJ and district court had misinterpreted. The Court launched into a thorough analysis of the statute, drawing on authority from the Supreme Court as well as several district courts, to provide an alternative ground finding C.M. entitled to reimbursement. *M.M.*, 437 F. 3d at 1098-1000. That C.M. was entitled to reimbursement under *M.M.*'s first rationale does not render the Court's second rationale dicta.

The Court is also unpersuaded by Defendant's reliance on *Greenland*. *Greenland* 358 F. 3d 150. The Court is mindful to follow the precedent of the Eleventh Circuit and nothing in *Greenland* convinces the Court to depart from the clear holding of *M.M.* Accordingly, Defendant's motion to dismiss, with respect to the IDEA count, is denied.

### C.   *ADA Claim*

Section 12132 of the ADA states "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under the ADA, plaintiff must allege (1) that he is a qualified individual with a disability; (2) that

he was excluded from participation in or ... denied the benefits of the services, programs, or activities of a public entity or otherwise discriminated [against] by such entity; (3) by reason of such disability." *Shotz v. Cates,* 256 F. 3d 1077, 1079 (11th Cir. 2001) (internal quotes omitted.)

Additionally, a plaintiff asserting a private cause of action for violations of either the ADA or Section 504 may only recover compensatory damages upon a showing of intentional discrimination.[5] *Wood v. President and Trustees of Spring Hill College in City of Mobile,* 978 F. 2d 1214, 1219 (11th Cir. 1992); *Carter v. Orleans Parish Pub. Sch.,* 725 F. 2d 261, 264 (5th Cir.1984). Many Circuits have held that a Section 504/ADA claim requires more than the showing of a denial of a FAPE. *N.L. v Knox County Schools,* 315 F. 3d 688 (6th Cir. 2003); *Monahan v. Nebraska* 687 F. 2d 1164, 1170 (8th Cir. 1982); *Sellers v. Board of Massachusets,* 141 F. 3d 524 (4th Cir.1998).

Defendants assert that Plaintiffs have failed to allege any discrimination solely by reason of K.S.'s disabilities. The Court agrees. Construing the allegations in the complaint in a light most favorable to the Plaintiffs, which the Court is required to do at this stage of the proceedings, the Court finds the Plaintiffs have failed to sufficiently alleged an ADA claim. Plaintiffs have not alleged that Defendant's actions - ostensibly denying Plaintiffs request for a residential placement - were motivated solely by reason of Plaintiff's disability. Accordingly, Plaintiff's claim under the ADA is dismissed without prejudice with leave to amend.

---

[5] The ADA also expressly provides that "[t]he remedies, procedures and rights" available under Section 504 of the Rehabilitation Act of 1973 are also accessible under the ADA. 42 U.S.C. § 12133 (1995). With the exception of its federal funding requirement, the Rehabilitation Act, 29 U.S.C. § 794, uses the same standards as the ADA, and therefore, cases interpreting either are applicable and interchangeable. *See, e.g., Cash v. Smith,* 231 F.3d 1301, 1305 & n. 2 (11th Cir. 2000).

## IV.     Conclusion

_____Consistent with the foregoing, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss **(DE 6)** is **GRANTED IN PART and DENIED IN PART.** Defendant's Motion to Dismiss Plaintiffs' IDEA claim is **DENIED.**  Defendant's Motion to Dismiss Plaintiff's ADA claim is **GRANTED;** Count II is dismissed without prejudice with leave to amend.

DONE AND ORDERED in Chambers at West Palm Beach, Palm Beach County, Florida, this 26th day of September, 2007.

_____
KENNETH A. MARRA
United States District Judge